UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JACOB ROBERT CABLE, </br></br>Plaintiff, </br></br>v. </br></br>KURARAY AMERICA, INC. *et al.*, </br></br>Defendants. | CAUSE NO. 3:22-CV-1031 DRL-MGG |

OPINION AND ORDER

Jacob Robert Cable, proceeding *pro se*, sued his former employers for discrimination and retaliation under Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the National Labor Relations Act (NLRA), and the Family Medical Leave Act (FMLA). Kuraray America, Inc. (KAI) and MonoSol, LLC (MonoSol) ask the court to dismiss his complaint under Federal Rules of Civil Procedure 12(b)(4) for insufficient process, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim. The court grants the motion in part but affords leave to amend.

BACKGROUND

As it must, the court assumes the well-pleaded facts in the complaint as true for purposes of this motion. Mr. Cable worked as a production associate for the defendants from 2012 until his termination in January 2021.

Mr. Cable was active as a union leader at the Merrillville, Indiana Kuraray-MonoSol[1] plant, eventually being appointed chief union steward. In 2018 and 2019, he assisted coworkers in filing grievances alleging discrimination and retaliation based on race and disability. On October 31, 2018, he was conducting union business at the plant and was walked off the premises by the plant manager and

---

[1] The complaint blends the names of these otherwise separate companies, so the court traces these facts as alleged.

assistant plant manager. Precisely why the complaint never says. Mr. Cable complained to human resources, but his removal from the premises was not investigated he says. In December 2019, a coworker wrote "fag" on Mr. Cable's union card and posted it in the plant. Mr. Cable again complained to human resources, but it refused to investigate and remedy the mistreatment.

Mr. Cable says he has depression and anxiety and is disabled under the ADA. In June 2019, he requested leave under the FMLA, which was granted. When he returned from FMLA leave, he faced mistreatment from coworkers including one speaking about his leave in unflattering terms and a different coworker placing a "Mental Instability Unit" sign on his workstation. Neither employee was disciplined for these actions.

In September 2020, another coworker circulated a document that described Mr. Cable as "mentally unstable" and referenced his disabilities. Mr. Cable reported this, but he says "Kuraray MonoSol" didn't hold the coworker accountable. Coworkers and managers made disparaging comments about Mr. Cable's disabilities and about his taking FMLA leave. He requested reasonable accommodations for his disabilities, but he says "Kuraray MonoSol" refused to engage in the interactive process to address these.

In October 2020, Mr. Cable was exposed to COVID-19 and required to take a two-week leave of absence. After this, he was required to submit to an evaluation of his mental health to be allowed to return to work and to seek psychiatric care with the company's EAP psychiatrist (EAP is an employee assistance program). On December 11, 2020, the company's EAP director released Mr. Cable to return to work but said that he should not work with his former coworkers and managers who had harassed him. He says "Kuraray MonoSol" refused to transfer Mr. Cable to a position where he wouldn't interact with these individuals and instead terminated him on January 5, 2021.

Mr. Cable filed an EEOC charge about his termination, which was arbitrated. He alleges that, in January 2022, the arbitrator ordered "Kuraray MonoSol" to reinstate him and ordered Mr. Cable to

submit to a full mental examination within thirty days. Mr. Cable couldn't get an appointment for the mental examination within the thirty-day time period, and "Kuraray MonoSol" didn't grant him an extension. Mr. Cable was terminated again on February 11, 2022. He received a right-to-sue letter from the EEOC on September 20, 2022.

On October 2022, Mr. Cable posted on his Facebook account that he was prepared to share information about his experience at "Kuraray MonoSol." The next day, Scott Bening, the former chief executive officer of "Kuraray MonoSol" followed him on LinkedIn. On November 6, 2022, Mr. Cable sent a LinkedIn message to Mr. Bening to inquire about his purpose for following him. He also sent a message to the new chief executive officer of "Kurary MonoSol," Christian Herrmanns. Neither Mr. Bening nor Mr. Herrmanns responded. On November 11, 2022, Mr. Cable began to post information about his experience at "Kuraray MonoSol" on Facebook.

## STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible and establishes a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012).

Evaluating whether a claim is plausible enough to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts have "a special responsibility to construe *pro se* complaints liberally" and must give a *pro*

*se* plaintiff's complaint "fair and meaningful consideration." *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (quotations and citation omitted). However, "dismissal of a complaint on the ground that it is unintelligible is unexceptionable." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001).

Under Rules 12(b)(4) and 12(b)(5), a court may dismiss a complaint when a plaintiff provides insufficient process or service of process on a defendant. A defendant's objections to process or service "must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized." *O'Brien v. R.J. O'Brien Assocs.*, 998 F.2d 1394, 1400 (7th Cir. 1993). The plaintiff bears the burden to demonstrate that the court has jurisdiction over each defendant through effective service. *See Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011); *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005). Rule 4(m) requires service within ninety days except for good cause. An extension of the Rule 4(m) period for serving the defendants must be granted if the plaintiff shows good cause for the lack of timely service.

## DISCUSSION

The defendants ask the court to dismiss the complaint under Rules 12(b)(4), 12(b)(5), and 12(b)(6). Before reaching the merits, the defendants argue that Mr. Cable's response to their motion was untimely. They ask the court to disregard it and grant the motion summarily. Mr. Cable mailed his response on March 9, 2023 for overnight delivery. Although it wasn't docketed until March 13, 2023, the court won't disregard Mr. Cable's timely-mailed filing.

Mr. Cable's response is nonetheless hard to decipher, though. The filing includes certain documents already included in the complaint: Mr. Cable's right-to-sue letter from the EEOC [ECF 13 at 1], his charge of discrimination [ECF 13 at 12], the "Particulars of Charge of Discrimination and Retaliation," [ECF 13 at 13], and the "Confidential Witness Affidavit" [ECF 13 at 20]. Refiling of the same documents is not responsive to the motion to dismiss, nor opposes the substance of the motion.

Mr. Cable includes new documents too. One is titled "General Allegations" [ECF 13 at 2] and the other is not titled but appears to be a letter from Mr. Cable to the members of his union [ECF 13 at

4

26]. Neither is responsive to the motion to dismiss. Nor may the court consider documents outside the pleadings when ruling on a Rule 12(b)(6) motion.

Nowhere in the response does Mr. Cable address why his complaint shouldn't be dismissed for insufficient process, insufficient service of process, or failure to state a claim. The "General Allegations" document outlines many of the issues raised in the complaint. It also discusses new issues, including abuse, negligence, fraud, OSHA violations, and even religious discrimination, that fall outside the scope of his current pleading. The court construes this document as a response to the motion rather than an untimely and proposed amended complaint. *See* Fed. R. Civ. P. 15(a)(1)(B).

A. *Failure to State a Claim Under Rule 12(b)(6).*

KAI and MonoSol say Mr. Cable's complaint is an "unintelligible patchwork of allegations and lacks sufficient clarity" to satisfy Rule 8's requirement that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. A complaint's primary purpose is "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). KAI and MonoSol say Mr. Cable's complaint falls short for numerous reasons.

First, they say the complaint doesn't provide them with fair notice of the claims asserted against them because it is inconsistent. The first page of the form complaint asserts claims under Title VII, the ADA, and the NLRA [ECF 1 at 1]. Mr. Cable also attached two documents to the form complaint, one titled "Particulars of Charge of Discrimination and Retaliation" [ECF 1 at 4] and one titled "Confidential Witness Affidavit" [ECF 1 at 11]. KAI and MonoSol say these documents don't contain any allegations as to violations of the NLRA.

The NLRA protects labor unions and their members. Section 8 of the NLRA makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7." National Labor Relations Act, Pub. L. No. 74-198, 49 Stat. 449, § 8(1) (1935) (codified as

5

amended at 29 U.S.C. § 158). These protected rights include "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* § 7 (codified as amended at 29 U.S.C. § 157).

Mr. Cable's "Particulars of Charge of Discrimination and Retaliation" doesn't mention the NLRA explicitly. It does, however, assert facts that could support an NLRA claim. Mr. Cable alleges that he assisted a coworker in filing a discrimination and retaliation grievance and his "participation in the process and opposition to the discrimination and retaliation on behalf of [the coworker] was not well received by [KAI and MonoSol] management. In response, [KAI and MonoSol] management made it clear to Mr. Cable that he would pay the price for it." Additionally, Mr. Cable asserts that on October 31, 2018, he "was on the premises conducting union business," but was escorted off the property by the Assistant plant manager and plant manager. Precisely why the complaint never says, but Mr. Cable alleges he later complaint that "he had been singled out and treated worse due to his . . . protected activities."

Though these assertions could go to an NLRA claim, "federal district courts do not have subject-matter jurisdiction over claims that an employer engaged in an unfair labor practice that violates Section 8 of the NLRA; those claims must be taken to the National Labor Relations Board." *Brooks-Albrechtsen v. City of Indianapolis*, 681 F. Appx. 515, 517 (7th Cir. 2017); *see also Smart v. Local 702 IBEW*, 562 F.3d 798, 806 (7th Cir. 2009) ("NLRB, not the courts, is vested with primary jurisdiction for adjudicating labor disputes under sections 7 and 8").[2] Accordingly, the court must dismiss any NLRA claim.

Second, KAI and MonoSol invite the court to dismiss the FMLA claim because it is not listed on page one of the form complaint and instead appears in Mr. Cable's "Particulars of Charge of

---

[2] It appears Mr. Cable knows this. His second attachment, titled "Confidential Witness Affidavit," seems to be intended for the NLRB. It is signed by an NLRB agent and says the information in the affidavit will "assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation." Mr. Cable may continue to pursue any NLRA claim with the NLRB, not here.

Discrimination and Retaliation." The court declines, though the court agrees that Mr. Cable's complaint must be a self-contained whole document rather than a compilation of separate documents. Of course, Mr. Cable may attach exhibits, but his complaint must as a whole state in plain and concise terms the entirety of his allegations rather than merely refer to other documents that may have additional allegations. Of course, he uses the form appropriately by attaching an additional statement of his facts.

That said, Mr. Cable asserts an FMLA retaliation claim: (1) "Mr. Cable remained employed at [KAI and MonoSol] until he was illegally terminated in violation of … the Family Medical Leave Act (the "FMLA") in January of 2021," and (2) after Mr. Cable assisted coworker Mike Williams in attempting to exercise his FMLA rights, Mr. Cable says that KAI and MonoSol "management made it clear to Mr. Cable that he would pay the price for it." That Mr. Cable, a *pro se* litigant, failed to include it on the list of claims on page one doesn't make it unclear that he is asserting an FMLA claim against the defendants given the clear language he used in the "Particulars of Charge of Discrimination and Retaliation."

Third, KAI and MonoSol argue that, because Mr. Cable's complaint contains references to "similarly situated persons," it is unclear whether he is trying to assert a class action claim. Mr. Cable twice uses the phrase "similarly situated persons," both in the same context. Mr. Cable says he is seeking damages "to discourage [KAI and MonoSol] from engaging in discriminatory or retaliatory treatment of myself or any similarly situated person in the future." This is construed as a reference to punitive damages, which can be used to send a message and deter future similar discrimination, *see Baker v. Runyon*, 114 F.3d 668, 669 (7th Cir. 1997); *Kemezy v. Peters*, 79 F.3d 33, 34 (7th Cir. 1996), or that analysis related to his discrimination claims. KAI and MonoSol's argument isn't cause to dismiss, though Mr. Cable cannot pursue the claims of other employees.

Fourth, KAI and MonoSol say they are unable to ascertain which facts Mr. Cable relies on to form the basis of his claims because the "Particulars of Charge of Discrimination and Retaliation" and "Confidential Witness Affidavit" documents don't seem to relate to each other. The "Confidential

7

Witness Affidavit" explains Mr. Cable's NLRA claim, and that claim has been dismissed. The "Particulars of Charge of Discrimination and Retaliation" explains the other claims—Title VII, ADA, and FMLA. The court won't dismiss these claims simply because Mr. Cable included an additional document explaining a separate claim, particularly when that separate claim has been dismissed. *See Davis*, 269 F.3d at 820 (court cannot "dismiss a complaint merely because it contains repetitious and irrelevant matter, a disposable husk around a core of proper pleading"); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("fat in a complaint can be ignored, confusion or ambiguity dealt with by means other than dismissal").

Fifth, KAI and MonoSol argue that the allegations in Mr. Cable's complaint don't provide fair notice to them as to which claims are asserted against whom. The defendants break this argument into two parts. KAI says Mr. Cable does not provide any factual allegations describing his connection or relationship to KAI, nor alleges that KAI employed him. This isn't the case. The first paragraph of Mr. Cable's "Particulars of Charge of Discrimination and Retaliation" says, "Mr. Cable remained employed at Respondents until he was illegally terminated." Mr. Cable asserts that he was employed by both KAI and MonoSol. The court cannot peer behind the complaint to decide at this stage whether this is true.

KAI and MonoSol alternatively argue that Mr. Cable repeatedly uses the terms "Respondent" and "Respondents" interchangeably throughout his complaint, so it proves impossible to determine which counts he alleges against KAI and which he alleges against MonoSol. On this point, KAI and MonoSol are correct. For example, the complaint says, "Mr. Cable remained employed at Respondents until he was illegally terminated in violation of the Americans with Disabilities Act, Title VII and the Family Medical Leave Act (the "FMLA") in January of 2021" [ECF 1 at 4] and "Mr. Cable alleges Respondent violated Title VII, and the ADA by discriminating and retaliating against him on the basis of his disabilities, his perceived sexual orientation and his participation in protected activities under these statutes" [ECF 1 at 9]. It isn't clear whether these claims are alleged against both defendants or just one. *See Paul v. Marberry*,

658 F.3d 702, 705 (7th Cir. 2011) (dismissal of unintelligible claim is required by Rule 8(a)(2)); *Davis,* 269 F.3d at 820 ("dismissal of a complaint on the grounds that it is unintelligible is unexceptionable").

"Leave to amend is to be 'freely given when justice so requires.'" *Liu v. T&H Mach.*, 191 F.3d 790, 794 (7th Cir. 1999) (quoting *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) and Fed. P. Civ. P. 15(a)). "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss," *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015), particularly when the plaintiff is proceeding *pro se*, *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Mr. Cable is proceeding *pro se* and dismissal without leave to amend here would bar resolution of his claim on the merits because the ninety-day period for filing a complaint after his EEOC letter was received has run. Justice requires leave to amend.

In sum, the court dismisses the complaint but affords Mr. Cable leave to amend his complaint. The document should be called "amended complaint," utilizing the court's complaint form, and Mr. Cable should provide the facts as to what has transpired, such as the harm, who specifically caused the harm, how they caused the harm, when they caused the harm, and the like. These facts can be appended to the court's complaint form, albeit in numbered paragraphs, each one stating a concise fact. There must be sufficient facts pleaded to allow the court and the defendants to understand there is a plausible claim. This amended complaint will fully replace the original complaint and must comply with the Federal Rules of Civil Procedure and the district's Local Rules.

B.   *Insufficient Summons and Service Under Rules 12(b)(4) and 12(b)(5).*

KAI and MonoSol also argue that the case should be dismissed because Mr. Cable's summonses weren't addressed to a specific individual to whom service was allowed and instead were addressed directly to the corporate entities.

Federal Rule of Civil Procedure 4(h) governs service of process on corporations and requires service "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Under Rule 4(e)(1), service may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." This court is located in Indiana, and service was intended to be made in both Indiana (MonoSol) and Texas (KAI).

Under Indiana Trial Rule 4.6(A)(1), service upon domestic organizations must be made "upon an executive officer . . . or [upon] an agent appointed or deemed by law to have been appointed to receive service . . . ." Similarly, Texas law authorizes service on a corporation through the corporation's registered agent, president, or vice-president. *See* Tex. Bus. Orgs. Code §§ 5.201, 5.255(3); *see also Henderson v. Republic of Texas Biker Rally, Inc.*, 672 Fed. Appx. 383, 385 (5th Cir. 2016).

Whether attempting service under Rule 4(h)(1), Indiana law, or Texas law, a plaintiff must secure service on a corporation through an authorized individual. Service addressed merely to a corporate entity (not an individual identified in the applicable rules of service) is defective. *See Trytko v. US Bank Home Mortg.*, 2018 U.S. Dist. 145397, 9 (N.D. Ind. Aug. 10, 2018); *Zumbrun v. Nat'l Asset & Risk Mgmt., LLC*, 2013 U.S. Dist. LEXIS 44029, 5 (N.D. Ind. Mar. 28, 2013). Mr. Cable addressed the summonses to corporate entities, not to the authorized representatives.

KAI and MonoSol also challenge the sufficiency of service of process under Rule 12(b)(5). Under Rule 4(m), "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

10

Despite several attempts, Mr. Cable has not effectuated timely service of process on the defendants. Mr. Cable was required to do so by March 16, 2023. *See* Fed. R. Civ. P. 4(m). His first attempt at service was on December 30, 2022, via email. This attempt was improper as the Federal Rules of Civil Procedure don't permit service via email, and the summons didn't include a copy of the complaint. *See* Fed. R. Civ. P. 4(c). His second attempt at service in early January 2023 was improper as the summonses also didn't include a copy of the complaint and the deliveries were signed by third-party employees who were not agents authorized to accept service on behalf of either defendant. *See* Fed. R. Civ. P. 4(h).

When analyzing a service of process defect, the court "must first inquire whether a plaintiff has established good cause for failing to effect timely service." *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996). To show good cause, Mr. Cable must show reasonable diligence. *Bachenski v. Malnati*, 11 F.3d 1371, 1376-77 (7th Cir. 1993). If the plaintiff has shown good cause, "the court *shall* extend the time for service for an appropriate period." *Panaras*, 94 F.3d at 340 (citing Fed. R. Civ. P. 4(m)). If the plaintiff has not shown good cause, the court then has the discretion whether to extend the time for service or else dismiss the action without prejudice. *Id.*

Within the ninety-day period, Mr. Cable attempted to effect service on the defendants on two separate occasions. Mr. Cable is proceeding *pro se*, so the court put Mr. Cable on notice that the defendants alleged that his first two attempts at service were improper and directed him to the relevant service of process requirements. Mr. Cable still failed to comply with Rule 4 before the ninety-day period expired. Though perhaps Mr. Cable has not acted with reasonable diligence, the court grants a discretionary extension to his time to serve under the relevant factors. *See Cardenas,* 646 F.3d at 1006-07. Weighing in favor of dismissal is the lack of evidence that the defendants evaded service or admitted liability. But it is reasonable to presume the unserved defendants have actual notice of the lawsuit when counsel appeared on January 18, 2023. Their actual notice and ability to defend the suit in the absence of proper service weigh in favor of granting Mr. Cable an extension to perfect service. Dismissal of this case would be fatal

11

to Mr. Cable's claims, which weighs strongly in favor of granting an extension. The balance of the relative hardship of the parties today weighs against dismissal.

Service must be properly perfected, however. Mr. Cable must ensure that both a summons and the amended complaint are sent to each defendant. The summons may be directed to each company's president (or other agent authorized by rule). Alternatively, Mr. Cable may have a summons authorized and sent to each company's registered agent. Sometimes counsel do both. Both Indiana and Texas have websites that permit individuals to search for the addresses of a company's principal office where the president would receive mail or alternatively to search for a company's registered agent where it could receive mail on behalf of one of the defendants. *See* https://bsd.sos.in.gov/publicbusinesssearch (Indiana); https://mycpa.cpa.state.tx.us/coa/ (Texas). If these companies will not waive service under Rule 4, Mr. Cable will need to place both the authorized summons and complaint in certified mail to each company, properly addressed and properly naming either the president (even generically) and sent to the address of the company's principal office, or to the name of the registered agent (often, and in this case, CT Corporation System) and sent to the registered agent's address. This information is available on these websites. The court grants an extension today to complete service of process under Rule 4(m).

## CONCLUSION

The court GRANTS IN PART KAI and MonoSol's motion to dismiss under Rule 12(b)(6) alone [ECF 8], DISMISSES the complaint, AFFORDS Mr. Cable until July 14, 2023 to file an amended complaint, GRANTS him until July 28, 2023 to perfect service of process in accordance with Rule 4 on both defendants, and CAUTIONS him that the failure to file an amended complaint by the deadline or to perfect service of process by this separate deadline may result in the dismissal of his case.

SO ORDERED.

June 22, 2023                                          *s/ Damon R. Leichty*
                                                       Judge, United States District Court