UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JACOB ROBERT CABLE,

    Plaintiff,

v.                                    CAUSE NO. 3:22-CV-1031-DRL-MGG

KURARAY AMERICA, INC.,

    Defendants.

OPINION AND ORDER

Jacob Robert Cable, proceeding *pro se*, originally filed a complaint against Kuraray America, Inc. (KAI) and MonoSol, LLC [1]. Because the complaint failed to sufficiently state a claim for relief it was dismissed under Rule 12(b)(6), but Mr. Cable was afforded leave to amend his complaint. He filed an amended complaint, this time raising seventeen claims against fourteen defendants [19]. Two motions for a more definite statement, a motion to dismiss for failure to state a claim, and multiple motions for extensions of time to file an answer followed, so the court stayed the case to allow time to screen the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

First, the amended complaint does not comport with Federal Rule of Civil Procedure 8(a)(2) and (d), which requires but a "short and plain statement of the claim"—with allegations that are "simple, concise, and direct." Instead, Mr. Cable filed a forty-two-page document with 177 paragraphs. "Parties [must] make their pleadings straightforward, so that judges and adverse parties need not fish a gold coin from a bucket of mud," *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003), and his original and the amended complaint is far from straightforward.

Second, some of Mr. Cable's allegations are unrelated to each other. "[U]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir.

2007); *see* Fed. R. Civ. P. 20(a)(2). Mr. Cable may not avoid filing fee requirements by tossing into a single complaint a menagerie of unrelated allegations against unrelated defendants.

In the interest of thoroughness, the court nonetheless proceeds in screening the amended complaint. Pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 602. Nevertheless, a *pro se* complaint must be liberally construed "however inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

In the amended complaint, Mr. Cable raises various allegations related to his employment at MonoSol, his termination, what he describes as retaliation thereafter. The court assumes the well-pleaded facts in the complaint as true. Mr. Cable worked at MonoSol, who he seems to incorrectly identify in his amended complaint as Kuraray MonoSol, LLC, and refers to sometimes as his "employer." He was employed there beginning in 2012, terminated on January 5, 2021, reinstated on January 11, 2022, and terminated again on February 11, 2022 [19 at ¶ 1]. Mr. Cable had no disciplinary record at the time of his terminations [¶ 111] and MonoSol didn't cite any work rule violations, provide prior warning, or provide progressive discipline before terminating him [¶ 2]. He "experienced harassment, discrimination, interference, monitoring more closely than others, and retaliation from colleagues, superiors, and burdensome work assignments" [¶ 23] due to his role as Chief Union Steward. During his tenure as a steward, he assisted employees in filing grievances against their

employer, some of which Mr. Cable recounts in his amended complaint. His manager had a "fiery temper, aggressive outbursts and extreme intensity and hostility towards protected concerted activities" [¶ 20].

He filed an EEOC charge on August 16, 2022, which he attached to his original complaint, save for the amended particulars that were not attached [1-1], claiming discrimination based on race, sex, disability, and retaliation. His amended complaint, reading it liberally as the court must, *see Erickson*, 551 U.S. at 94, endeavors to allege Title VII claims for discrimination, retaliation, disability discrimination under the Americans with Disabilities Act (ADA), and violations of the National Labor Relations Act (NLRA) and Family and Medical Leave Act (FMLA). At the end of the complaint, Mr. Cable also lists additional causes of action: wrongful termination [¶ 140], breach of contract [¶ 142], negligence [¶ 143], defamation [¶ 144], conspiracy to violate civil rights [¶ 146], invasion of privacy by violating the Health Insurance Portability and Accountability Act (HIPAA) [¶ 150], intentional infliction of emotional distress [¶ 151], violation of the Whistleblower Protection Act (WPA) [¶ 153], violation of the Labor Management Relations Act (LMRA) [¶ 157], violations of Occupational Safety and Health Administration (OSHA) regulations [¶ 159], breach of duty to fairly represent [¶ 160], breach to bargain in good faith [¶ 161], and violating double jeopardy [¶ 162]. Many of these additional causes of action are merely a short phrase with no explanation.

First, as in the previous dismissal order, any NLRA claim is dismissed as "federal district courts do not have subject-matter jurisdiction over claims that an employer engaged in an unfair labor practice that violates Section 8 of the NLRA; those claims must be taken to the National Labor Relations Board." *Brooks-Albrechtsen v. City of Indianapolis*, 681 F. App'x 515, 517 (7th Cir. 2017); *see also Smart v. Loc. 702 Int'l Brotherhood of Elec. Workers*, 562 F.3d 798, 806 (7th Cir. 2009) ("the NLRB, not the courts, is vested with primary jurisdiction for adjudicating labor disputes under sections 7 and 8").

Second, as to Mr. Cable's discrimination claims under Title VII of the Civil Rights Act, the screening standard in employment discrimination cases is lenient for *pro se* plaintiffs: "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to [his] protected characteristics." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Mr. Cable seems to try to bring a claim based on racial discrimination [¶ 156] but asserts no facts to plausibly infer this. Nowhere does he say his race or allege any facts that one could use to infer that his employer terminated him based on race. Similarly, Mr. Cable originally checked sex discrimination in his EEOC charge, but asserts no facts on which to plausibly infer that he was discriminated against based on sex. At one point he says his sexuality was targeted [¶ 96] but doesn't explain how or by whom. Any claims under Title VII based on race or sex discrimination must be dismissed.

Third, as to a Title VII retaliation claim, "[t]o state a claim for retaliation under Title VII, a plaintiff must allege that he engaged in statutorily protected activity and suffered an adverse action as a result of that activity." *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (quotations and citations omitted). "The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986-87 (7th Cir. 2014). To be materially adverse, the action must be more than a mere inconvenience or trivial alteration of job responsibilities. *Porter v. City of Chi.*, 700 F.3d 944, 954 (7th Cir. 2012). In contrast, diminished compensation or termination often will constitute a materially adverse action. *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004).

Mr. Cable asserts what seems a retaliation claim many times throughout the amended complaint, but he offers very few facts on which to plausibly infer that he suffered an adverse employment action as a result. His general statements like "They retaliate. They do not like FMLA

4

users." [¶ 80] aren't enough. He says MonoSol and Teamsters Local 135 used the LaPorte mayor to retaliate [¶ 100] but doesn't explain how. He says a coworker and fellow union steward, John Murphy, would retaliate "via malicious rumors, circulating a petition in my work areas targeting [my] mental health/disabilities" [¶ 111]. Mr. Cable doesn't explain why Mr. Murphy was acting on behalf of MonoSol in this instance or even state that MonoSol knew of or endorsed his behavior. Elsewhere, Mr. Cable says Plant Manager Paul Stout held him to higher standards after filing grievances against Mr. Stout on behalf of another employee [¶ 30]. Even if the court were to infer that this is an alteration of job responsibilities, Mr. Cable hasn't pleaded sufficient facts to support a claim that he suffered a materially adverse action as a result of a protected activity. The Title VII retaliation claim must be dismissed.

Fourth, Mr. Cable asserts a harassment claim. "To state a Title VII hostile work environment claim, a plaintiff must allege (1) [he] was subject to unwelcome harassment; (2) the harassment was based on … [a] reason forbidden by Title VII; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833-34 (7th Cir. 2015) (citation omitted). He uses the word harassment many times throughout the complaint but alleges no facts that support an inference that any harassment was based on a protected characteristic or was so severe or pervasive as to create a hostile working environment. His harassment claim must be dismissed.

Fifth, Mr. Cable brings a disability discrimination claim. The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The ADA then defines 'discriminate against a qualified individual on the basis of disability' to include disparate

treatment and failure to accommodate: 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee.'" *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (emphasis omitted) (quoting 42 U.S.C. § 12112(b)(5)(A)). Disability discrimination claims typically fall under two theories: (1) failure to provide reasonable accommodations and (2) disparate treatment. It is unclear which Mr. Cable is pursuing.

In one part of the amended complaint, he makes general reference to his anxiety, depression, and mental disabilities [¶ 36]. In another, he provides examples of other employees who he says were discriminated against based on their disabilities [¶ 80, 84]. He makes conclusory statements like "my mental disabilities [were] targeted" [¶ 96] and that there was "intentional targeting/retaliating/and gas lighting of mental disabilities" [¶ 127]. He gets more specific once when discussing Mr. Murphy's retaliation "via malicious rumors, circulating a petition in my work areas targeting [my] mental health/disabilities," considered *supra* [¶ 111]. He also describes an instance where an HR representative told him that a concerned employee came forward concerned about Mr. Cable's "troubles with anxiety and depression" and that MonoSol "genuinely cared and wanted to help [him] return to [his] full functioning level, so they were putting [him] on a paid leave to be evaluated" by the Employee Assistance Program Director [¶ 4]. He alleges he was "refused an extension of unpaid time when [he] requested it," but doesn't say why he needed the additional time or if that was connected to his disabilities [¶ 4]. He also says "[t]here was no interactive process in the beginning, the middle, or at the end of my employment by the employer (prior to making the decision to force the paid leave, the medical releases, forced psychological testing, the decision to terminate.)" [¶ 128].

To the extent Mr. Cable is pursuing a failure to accommodate theory, he hasn't pleaded any facts to advance this theory including what accommodations he sought and when. Similarly, he has pleaded no facts to support a disparate treatment theory or on which the court could use to draw the

reasonable inference that MonoSol discriminated against Mr. Cable because of his disability. Any claims under the ADA must be dismissed.

Sixth, Mr. Cable seems to pursue an FMLA claim. Employers are prohibited from interfering with an employee's attempt to take leave under the FMLA or for retaliating against employees who take such leave. *See* 29 U.S.C. § 2615. A claim of interference with FMLA rights requires a plaintiff to establish that (1) he was eligible for the FMLA's protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied his FMLA benefits to which he was entitled. *Lutes v. United Trailers, Inc.,* 950 F.3d 359, 363 (7th Cir. 2020); *Guzman v. Brown Cnty.*, 884 F.3d 633, 638 (7th Cir. 2018). A claim for retaliation requires a plaintiff to establish that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse action against him; and (3) there is a causal connection between the two. *See Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). Again, it is unclear which Mr. Cable is pursuing.

In one place, Mr. Cable says he had to take FMLA leave throughout his employment [¶ 37]. He also alleges generally that MonoSol and KAI "do not like FMLA users" [¶ 80] and "ignore, deny, cover-up, collude together, unlawfully assist each other" to the point where employees who were targeted for FMLA use [¶ 37]. He seems to give examples of other employees who he says were terminated for using FMLA leave [¶ 80, 84]. He says "management never stopped [certain union stewards] from ridiculing/discouraging FMLA use by making disparaging comments about it" [¶ 57]. He recalls an incident from approximately 2018 when coworkers put a sign that said "FMLA Jake" and tampons on his lunch pail [¶ 34].

Mr. Cable has not stated a claim for FMLA interference. He never says he was entitled to additional FMLA leave, provided sufficient notice to MonoSol, and was denied. Any claim for FMLA retaliation also falls short. Although Mr. Cable mentions his termination, he offers no factual

allegations that directly or inferentially connect this adverse action, or any other for that matter, to his protected use of FMLA leave. He offers no facts that make this viewpoint plausible. Mr. Cable's FMLA claims are dismissed.

Seventh, Mr. Cable raises a wrongful termination claim [¶ 140]. *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973) created an action for wrongful termination "when an employee is discharged solely for exercising a statutorily conferred right." *Id.* at 428. Although Mr. Cable states that he was terminated, he never asserts why he was terminated or connects his termination to any protected characteristic or activity. He hasn't alleged any facts on which the court can rely to infer that MonoSol terminated him wrongfully.

Eighth, he asserts some semblance of a breach of contract action [¶ 142]. Mr. Cable says "Defendant, by their failure to provide, and/or follow legal, moral, and ethical obligations and/or duties owed is currently in breach of the contract" [¶ 121]. He doesn't say what contract this is, who was party to it, or specifically how it was breached. Elsewhere he says, "Both sides continually refused my requests for either Teamsters leadership or Kuraray MonoSol to copy me in and/or forward me copies of whatever information I was supposed to be getting contractually in digital format when available," but then later in that same paragraph says that they refused to email documentation that "would make my contractual duties … less burdensome." [¶ 14]. Mr. Cable hasn't pleaded facts sufficient to allow the court to draw the reasonable inference that any of the defendants breached a contract with Mr. Cable.

Ninth, he claims negligence [¶ 143]. "To prevail on a theory of negligence, a plaintiff must prove: (1) that the defendant owed plaintiff a duty; (2) that it breached the duty; and (3) that plaintiff's injury was proximately caused by the breach." *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012). The duty element concerns the duty to exercise care for the safety of another. *See Neal v. Home Builders Inc.*, 111 N.E.2d 280, 285 (Ind. 1953). Mr. Cable labels a section of his complaint

"negligence" and says generally that the defendants "acted in a negligent manner by not properly obeying protected legal rights and the collective bargaining agreement between Kuraray MonoSol and Teamsters local 135." [¶ 121]. He continues, alleging that "Defendants" had a duty to "enforce our collective bargaining agreement in good faith" [¶ 126]. The court cannot identify any facts that Mr. Cable asserts to support a negligence claim and his mere use of the words "negligence" and "duty" throughout the complaint is not enough. And he cannot convert a contract claim into a tort.

Tenth, he alleges defamation [¶ 144]. Defamation requires a showing of a false statement made by the defendant plus a showing of malice. *See Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 956 (Ind. Ct. App. 2014) ("Any statement actionable for defamation must not only be defamatory in nature, but false."). "[A] plaintiff who sues for defamation must set out the alleged defamatory statement in his complaint." *Id.* Mr. Cable doesn't identify any statements he views as false, nor state any facts on which the court could infer such statements were made with malice. His one-time inclusion of "set up false reports" in a list of allegations is not sufficient [¶ 154]. This claim is dismissed.

Eleventh, he alleges conspiracy to violate civil rights [¶ 146]. Mr. Cable seems to allege that MonoSol colluded with the city and county police and the LaPorte mayor to deprive him of civil rights [¶ 146, 147]. He says this happened "multiple times" [¶ 111] but asserts no facts to support this claim. Conclusory allegations like this aren't enough. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) ("legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to [a] presumption of truth").

Twelfth, he claims invasion of privacy by violating the Health Insurance Portability and Accountability Act (HIPAA) [¶ 150]. HIPAA does not create a private right of action. *See Dittmann v. ACS Hum. Servs. LLC,* 210 F. Supp.3d 1047, 1054 (N.D. Ind. 2016). "Only the Secretary of Health and Human Services or the Attorney General of a state may bring an enforcement action under HIPAA." *Id.* This claim is dismissed.

Thirteenth, he alleges intentional infliction of emotional distress [¶ 151]. To bring a successful claim of intentional infliction of emotional distress, a plaintiff must prove that the defendant (1) engaged in extreme and outrageous conduct, (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997); *State v. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020). Intentional infliction of emotional distress is found where conduct "exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009) (quoting *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005)). Mr. Cable's complaint merely includes the phrase "intentional infliction of emotional distress" and his assertion that the defendants' actions have caused him severe emotional distress [¶ 151, 152]. The court cannot discern what conduct Mr. Cable is alleging to be extreme and outrageous—merely saying all fourteen defendants' actions is not enough. He asserts no facts on which the court can infer that any defendant engaged in extreme and outrageous conduct intentionally or recklessly. Any intentional infliction of emotional distress claim is dismissed.

Fourteenth, he alleges a violation of the Whistleblower Protection Act (WPA) [¶ 153]. First, even with a liberal reading of the complaint, the court can't tell what whistleblowing Mr. Cable participated in. Aside from that, the WPA doesn't provide for review by this court. *See, e.g., Gibbs v. Jewell*, 36 F. Supp.3d 162, 166-67 (D.D.C. 2014) (citations omitted) ("[U]nder no circumstances does the WPA grant the District Court jurisdiction to entertain a whistle-blower cause of action brought directly before it in the first instance.").

Fifteenth, he alleges a violation of the Labor Management Relations Act (LMRA) [¶ 157]. Two of Mr. Cable's other listed causes of action—"breach of duty to fairly represent" [¶ 160] and "breach to bargain in good faith" [¶ 161]—seem to relate to his LMRA claim. Section 301 of the LMRA establishes federal jurisdiction over "suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce" without respect to the

amount in controversy or citizenship of the parties. 29 U.S.C. § 185(a). "A successful section 301 claim requires not only a breach of contract by the employer but also a breach by the plaintiffs' union of its duty of fair representation." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 913 (7th Cir. 2013). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

Mr. Cable has not sufficiently stated a claim under the LMRA as he has failed to adequately plead sufficient facts regarding the union's breach of its duty to fairly represent its members. The closest Mr. Cable gets is an assertion that his union, Teamsters Local 135, refused to file a grievance contesting his second termination [¶ 3, 164], but this is a conclusory allegation. Mr. Cable makes no assertions about the union acting either arbitrarily, discriminatorily, or in bad faith, and no facts pleaded would support such an inference. Absent some specific factual detail to color his bare conclusory allegation, his LMRA claim is dismissed.

Sixteenth, Mr. Cable asserts violations of Occupational Safety and Health Administration (OSHA) regulations [¶ 159], but OSHA does not authorize a private cause of action. The statute authorizes a person to report violations to the Secretary of Labor, who is then charged with enforcing the statute. 29 U.S.C. § 660(c)(2); *see also Doyle v. Indiana Packers*, 2022 U.S. Dist. LEXIS 232432, 3 (N.D. Ind. Dec. 28, 2022); *Thornton v. AT&T Mobility Servs.*, 2010 U.S. Dist. LEXIS 95540, 11 (C.D. Ill. Sept. 14, 2010).

Finally, he alludes to double jeopardy [¶ 162]. The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal or conviction and against the imposition of multiple criminal punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980). Mr. Cable asserts no facts at all related to any criminal matter. This claim is dismissed.

Accordingly, Mr. Cable hasn't pleaded any claims that survive a screening. The court cautions Mr. Cable that repeated failure to comply with the federal rules could result in dismissal of the case. *See, e.g., Davis v. Anderson*, 718 F. App'x 420, 424 (7th Cir. 2017) (deferring to the district court "who must decide whether to dismiss a case with prejudice when counsel repeatedly fails to plead properly"); *Flayter v. Wis. Dept. of Corr.*, 16 F. App'x 507, 508-09 (7th Cir. 2001) (finding a 116-page complaint with 760 pages of exhibits to be a "clear violation of Federal Rule of Civil Procedure 8(a)(2)").

That said, the court will give Mr. Cable one more chance, albeit with a narrow focus. *See Liu v. T&H Mach.*, 191 F.3d 790, 794 (7th Cir. 1999) ("Leave to amend is to be 'freely given when justice so requires.'"). To the extent Mr. Cable believes he can develop a short and plain statement of the claim, he may file an amended complaint, consistent with Rule 8 and this order, but only as it relates to discrimination, harassment, or retaliation by his employer (which on the pleadings thus far seems to be MonoSol, LLC). He is not permitted to raise other claims that cannot be brought under the law or join additional defendants. To the extent he wishes to pursue an unrelated claim against the county, city, mayor, lawyers, clinics, or other unrelated defendants, and believes he can do so consistent with this ruling, he must file separate actions.

He is encouraged to use the court's standard civil complaint form to prepare his amended complaint. He must establish that his case falls within the limited jurisdiction of this court and provide as many facts as to what has transpired, such as: the harm, who caused the harm, how they caused the harm, when they caused the harm, and the like. There must be sufficient facts pleaded to allow the court and the defendants to understand there is a plausible claim. This amended complaint will fully replace the original complaint and must comply with the Federal Rules of Civil Procedure and the district's Local Rules.

Accordingly, the court STRIKES the amended complaint [19] as noncompliant, AFFORDS Mr. Cable leave to amend his complaint to become compliant with the federal rules by January 19,

2024, CAUTIONS him that failure to comply with this deadline or file a rule-compliant complaint will result in the dismissal of this case without further notice, LIFTS the stay, and DENIES AS MOOT the motions for extension of time to file an answer by Employee Assistance Program [41] and David Vlink and the Vlink Law Firm [63], the motions for a more definite statement by LaPorte County Police [54] and Clarity Clinic [58], and the motion to dismiss by Catherine Buskar [60].

SO ORDERED.

December 21, 2023                              *s/ Damon R. Leichty*
                                               Judge, United States District Court